## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, DAYTON

| | | |
|---|---|---|
| **EDWARD LYONS** | : | Civil Action No. _____ |
| 8170 Chambersburg Road | : | |
| Huber Heights, OH 45424 | : | |
| | : | Judge _____ |
| Plaintiff, | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **TECUMSEH LOCAL SCHOOL** | : | |
| **DISTRICT** | : | |
| 9760 W. National Road | : | **COMPLAINT WITH JURY** |
| New Carlisle, OH 45344 | : | **DEMAND** |
| | : | |
| -and- | : | |
| | : | |
| **PAULA CREW**, in her individual and | : | |
| official capacities | : | |
| c/o Tecumseh Local School District | : | |
| 9760 W. National Road | : | |
| New Carlisle, OH 45344 | : | |
| | : | |
| Defendants. | : | |

Comes Plaintiff, Edward Lyons, for his Complaint against Defendants, Tecumseh Local School District, and Paula Crew, individually and in her official capacity as Superintendent, asserting claims of infringement of Plaintiff's right to freedom of speech under the United States Constitution, pursuant to 42 U.S.C. § 1983, and the Ohio Constitution, states as follows:

### PARTIES/JURISDICTION/VENUE

1. Plaintiff Edward Lyons resides at the address listed in the caption. He is a teacher at Tecumseh Middle School in New Carlisle, Ohio and has held this position at all times relevant to this lawsuit.

2. Defendant Tecumseh Local School District ("District") is a school district located in New Carlisle, Ohio.

3. Defendant Paula Crew is the District's superintendent and she has held this position at all times relevant to this lawsuit.

4. At all times relevant to this lawsuit, Defendant Crew acted as an agent of the District, who was and remains her employer.

5. Defendants are subject to the personal jurisdiction of this Court.

6. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district. *See* 29 U.S.C. § 1391(b).

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 as Plaintiff asserts herein a statutory claim under federal law. The Court should exercise supplementary jurisdiction over the state law claim asserted herein because this claim is sufficiently related to the federal claim pursuant to 28 U.S.C. § 1367(a).

## FACTS

8. Starting in 1995, Mr. Lyons has taught seventh-grade social studies at the Tecumseh Middle School.

9. During his long tenure Mr. Lyons has earned a reputation among his peers, his students, and the school community as an excellent teacher. He is not only well-liked but also highly respected for his teaching skills. His teaching abilities have

been widely recognized throughout the larger school community such that a local university hired Mr. Lyons to help train new teachers.

10. Before the incident described herein, Mr. Lyons was never subjected to any written discipline during his 26 years of teaching.

11. Unfortunately, in the several years preceding the incident, the District's administration had begun allowing student misconduct at school to increasingly occur without issuing appropriate discipline. Mr. Lyons observed this trend firsthand and was troubled by the instances of students acting out towards teachers and administrators without consequence. Many other teachers were similarly concerned.

12. In early 2020, the union's leadership asked Mr. Lyons if he would speak on this subject at an upcoming school board meeting. He agreed to do so.

13. On February 25, 2020, Mr. Lyons attended a regular meeting of the District's school board. The meetings are open to the public. As the District's superintendent, Defendant Crew also attended.

14. Mr. Lyons signed up to be one of the speakers during the public-comment section of the meeting. When it was his turn to address the board, he expressed his concerns about the worsening student misconduct problem and the District's failure to remedy it with consistent disciplinary measures.

15. Regrettably, the student misconduct problem worsened over the course of the 2019-20 and 2020-21 school years.

16. In August 2021, the District began its 2021-22 school year. As was customary, school staff sent Mr. Lyons a "frequent flyer" list, which identified sixth grade students from the prior school year who were most frequently sent to the office.

3

17. One of the "frequent fliers," then a 13-year old seventh-grader, was assigned to Mr. Lyons's fourth-period class. During the first few months of the 2021-22 school year, this student misbehaved during class and exhibited poor academic performance.

18. Mr. Lyons attempted to correct this student's behavior through a number of measures — *e.g.*, relocating the student's chair to the front of the classroom — but to no avail. He also reached out to the student's mother numerous times, including via email on October 28 and October 29, 2021.

19. On November 4, 2021, the student was disruptive in class. Mr. Lyons removed the student and referred him to the office. Mr. Lyons followed up with another email to the student's mother.

20. The next day, Friday, November 5, the student again refused to follow classroom rules. Without asking for permission first, the student stood up and announced he was leaving to use the restroom. Mr. Lyons told him to go back to his seat and ask properly, which was an appropriate response by Mr. Lyons and consistent with the widely accepted practice at the middle school.

21. The student disobeyed Mr. Lyons's instructions and tried to walk out the classroom door. Mr. Lyons stood in front of the door and held the door handle.

22. In response, the student became physical with Mr. Lyons. He pushed Mr. Lyons against the wall and continued to refuse Mr. Lyon's instructions to return to his seat. The standoff continued for approximately another ten minutes, during which time the student further initiated physical contact with Mr. Lyons.

23. Ultimately, the student relented and finally asked for permission to use the restroom, which Mr. Lyons allowed.

24. Mr. Lyons was not aware that another student had recorded the incident through a camera on her school-issued laptop computer. On information and belief, this video circulated widely among the student body immediately after the incident.

25. School leadership, including Superintendent Crew, came into possession of the video that afternoon and watched it.

26. No one from school leadership communicated to Mr. Lyons about the existence of the video or regarding the incident itself.

27. Mr. Lyons left school that day completely unaware of the situation. That evening, he was served at his home with a letter notifying him the District was putting him on administrative leave, effective immediately.

28. The following Monday, November 8, the school principal, Lauren McFarland, interviewed 19 students from Mr. Lyons's class. Almost every student reported that Mr. Lyons remained calm during the November 5 incident. At least one student expressly reported that Mr. Lyons tried to deescalate the situation.

29. Nevertheless, on November 12, the District served Mr. Lyons with a Notice of Disciplinary Charges and Pre-Disciplinary Hearing (copy attached herewith as "Exhibit A"), which was signed by Superintendent Crew.

30. To putatively support the potential disciplinary action, Superintendent Crew gave a distorted, one-sided account of the November 5 incident in the Notice. Critically, she wholly failed to acknowledge that the student was the aggressor and assaulted Mr. Lyons.

31. Superintendent Crew's account of the incident also included false and/or misleading statements. She alleged that Mr. Lyons "placed [his] arm around the student's neck," which was not true. She also alleged that "[t]he apparent reason for

5

initiating and continuing the altercation [was] that the student did not say 'please' when asking to use the restroom," which was a gross distortion of the incident, failing to recognize it was perfectly appropriate for Mr. Lyons to insist that the student ask for permission to leave the classroom, and, again, glaringly omitting the fact that the student had assaulted Mr. Lyons multiple times.

32. On or about November 23, following a pre-disciplinary hearing held the prior week, Superintendent Crew communicated to Mr. Lyons through his union that he had a choice: sign a "last chance" agreement or else be terminated.

33. Superintendent Crew further advised that Mr. Lyons had only one day to consider this proposal.

34. Mr. Lyons was flabbergasted that the District would try to force him to sign a "last chance" agreement. Other than termination, this was the most severe discipline the District could impose under the labor contract.

35. This draconian response to the November 5 incident constituted retaliation for Mr. Lyons's critical remarks at the board meeting regarding the District's inadequate response to the student discipline problem.

36. Mr. Lyons also was very suspicious of Superintendent Crew's motivation in trying to coerce him in signing a "last chance" agreement. He believed that if he signed it, the District would then subject him to a higher level of scrutiny and look for any misstep as a basis to fire him. He also believed the District might be bluffing. Accordingly, through his legal representative, Mr. Lyons communicated to Superintendent Crew that he declined to sign the "last chance" agreement.

37. Mr. Lyons was proven right: the District was bluffing. Even though he did not sign the "last chance" agreement, the District did not terminate Mr. Lyons.

6

38. However, Superintendent Crew then pursued the next-most severe discipline.

39. On November 30, Defendant Crew issued a Notice of Suspension (copy attached as "Exhibit B"), which provided for a 5-day unpaid suspension.

40. In the Notice of Suspension, Superintendent Crew recited the same one-sided account of the November 5 incident and repeated the same false statements as she had in the Notice of Disciplinary Charges.

41. Through his union, Mr. Lyons challenged the suspension pursuant to the labor contract's grievance procedure. The grievance proceeded to arbitration where the matter was heard before Daniel Zeiser, a highly experienced and well-regarded labor arbitrator.

42. Arbitrator Zeiser ruled that the District did not have "just cause" to issue the 5-day unpaid suspension against Mr. Lyons and mitigated the discipline to a 3-day paid suspension.

43. In so ruling, Arbitrator Zeiser detailed the student's assault against Mr. Lyons. He described that the student "pushed" Mr. Lyons multiple times, including "against the wall," "threatened to hit" Mr. Lyons, "grabbed [Mr. Lyons]'s glasses from his shirt," "grabbed [Mr. Lyons]'s neck" — which to Mr. Lyons felt like a choke — and also "bit [Mr. Lyons]'s hand and tried to bite it a second time."

44. Arbitrator Zeiser further described Mr. Lyons's physical response as being principally limited to grabbing the student's hand when the student tried to exit the classroom, which, when the student spun around with his back to Mr. Lyons, caused Mr. Lyons's hand to be draped "across the top of [the student]'s chest."

45. Notably, at no point did Mr. Lyons "place [his] arm around the student's neck" as Superintendent Crew had falsely alleged in the Notice of Disciplinary Charges.

46. While the arbitrator's decision set the record straight on what happened that day, the ruling could not undo the negative media coverage of the incident which was substantially driven by Superintendent Crew's actions.  Her failure to accurately and fairly describe the November 5 incident in the November 12 Notice of Disciplinary Charges directly led to Mr. Lyons suffering reputational damage.

47.  Superintendent Crew knew the Notice of Disciplinary Charges would be disclosed to the news media because it would be placed in Mr. Lyons's personnel file, a copy of which the media naturally would request.

48. In the weeks following the incident, Mr. Lyons was the subject of multiple news stories about the incident, describing his "altercation" with a student.  At least two media outlets quoted from the one-sided Notice, with headlines such as the following:[1]

# Tecumseh middle school teacher on leave after 'extended physical altercation' in classroom

49. A photograph of Mr. Lyons was prominently displayed in these articles.

---

[1] (*See* WHIO TV7, Nov. 17 2021; https://www.whio.com/news/local/tecumseh-middle-school-teacher-leave-amid-investigation).

8

50. Superintendent Crew further exacerbated the reputational damage to Mr. Lyons by directly making false and/or misleading statements to the media regarding the incident. She was quoted as stating that "training" on how to handle "disruptive students" was "offered to all teachers and staff members" and that "[a]ll teachers in school receive training on how to deal with disruptive children and behavior problems in the classroom setting." She further stated that the District "offer[ed] crisis prevention training to deal with disruptive students in a manner," which instructs teachers to "verbally deescalate the issue."[2]

51. However, Mr. Lyons had not received this specific training before the incident. The arbitrator noted that it was this absence of training that led Mr. Lyons to believe, erroneously, that grabbing the student's hand was a proper restraint in this circumstance.

52. Significantly, Superintendent Crew knew that Mr. Lyons had not received such training. In the Notice of Suspension, she directed Mr. Lyons to attend this very same training, an implicit admission he had never previously received it.

53. The resulting negative media coverage of Mr. Lyons surrounding the November 5 incident damaged his sterling reputation in the community, which caused him significant emotional distress and also resulted in his having to hire private legal counsel and incur substantial attorney fees.

54. In addition, a copy of the false and misleading Notice of Disciplinary Charges remains in Mr. Lyons's personnel file, which to date the District has refused to remove.

---

[2] (*See* Springfield News-Sun, Nov. 27, 2021; https://www.springfieldnewssun.com/news/attorney-tecumseh-teacher-wont-agree-to-disciplinary-action-after-alleged-altercation-with-student).

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – Violation of First and Fourteenth Amendments of the U.S. Constitution)**

55. Plaintiff incorporates the allegations set forth above as if fully restated herein.

56. Mr. Lyons's public comments at the District's school board meeting in February 2020 constituted an exercise of his right to freedom of speech as guaranteed under the First and Fourteenth Amendment of the U.S. Constitution.

57. Defendant Paula Crew is a "person" under 42 U.S.C. § 1983.

58. At all times relevant to this lawsuit, Defendant Crew acted pursuant to the official policies of the Tecumseh Local School District in that Defendant Crew has final policy-making authority.

59. Defendant Crew has the authority to issue discipline, including suspensions, against teachers employed by the District. She can issue such discipline without prior approval by the school board.

60. Defendant Crew exercised this authority in issuing the November 12 Notice of Disciplinary Charges and the November 30 Notice of Suspension.

61. Defendant Crew's foregoing conduct, including the false and/or misleading statements to the media about the November 5 incident, constituted retaliation against Mr. Lyons for the critical comments he made publicly about the District's administration at the school board meeting.

62. In their actions described herein, Defendants Crew and the District infringed on Mr. Lyon's constitutional rights, which directly and proximately resulted in damages to Mr. Lyons as described herein.

63. Defendants' actions were willful and malicious in nature, and Defendants demonstrated a reckless and/or conscious disregard for Mr. Lyons's rights under the law.

64. As a result of Defendants' unlawful actions, Mr. Lyons is entitled to recover damages against Defendants as set forth herein.

<b><u>SECOND CLAIM FOR RELIEF</u></b><br>(Violation of Ohio Constitution)

65. Plaintiff incorporates the allegations set forth above as if fully restated herein.

66. Defendants' actions described herein constitute an infringement of Mr. Lyons's free-speech rights under the Ohio Constitution. *See* OH Const. Art. I, § 11.

67. Defendants' retaliatory actions were willful and malicious in nature.

68. As a result of Defendants' actions, Mr. Lyons is entitled to recover damages against Defendants as set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at trial, for the following:

    A.    Compensatory damages, including but not limited to damages for loss of personal and professional reputation, incurring attorney fees, and suffering significant emotional distress;

    B.    Punitive damages;

    C.    An Order compelling the District to remove the erroneous Notice of Disciplinary Charges from his personnel file;

    D.    Pre- and post-judgment interest at the rate allowed by law;

    E.    Attorney fees, costs and expenses incurred in the investigation and prosecution of this action; and

    F.    Such other and further relief which the Court deems just, proper and equitable under the circumstances.

Dated: March 13, 2023.

        Respectfully submitted,

        */s/ Stephen A. Simon*
        Stephen A. Simon (0068268)
        Tobias, Torchia & Simon
        600 Vine Street
        Suite 910
        Cincinnati, OH 45202
        Tel: (513) 241-8137
        Fax: (513) 241-7863
        Trial Attorney for Plaintiff

## JURY DEMAND

Plaintiff requests a trial by jury on all issues triable to a jury.

        */s/ Stephen A. Simon*
        Stephen A. Simon (0068268)