UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EDWARD LYONS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-74 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| TECUMSEH LOCAL SCHOOL DISTRICT, et al. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| | : | |
| Defendants, | : | |

___

**ENTRY AND ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NO. 12)**
___

Presently before the Court is Defendants' Motion for Judgment on the Pleadings (the "Motion"). (Doc. No. 12.) Plaintiff Edward Lyons ("Lyons") filed his Complaint against Defendants Tecumseh Local School District (the "District") and the District's Superintendent Paula Crew ("Crew") (collectively "Defendants") alleging two causes of action. (Doc. No. 1.) Subsequently, Lyons filed an Amended Complaint (the "Amended Complaint"), only changing the language contained in three paragraphs of his original Complaint. (Doc. No. 9.) Lyons alleges First Amendment retaliation in violation of 42 U.S.C. § 1983 and a state law claim for violation of the Ohio Constitution. (*Id.* at PageID 63.) Defendants contend that they are entitled to judgment as matter of law on both counts. (Doc. No. 12.) In his response to Defendants' Motion (the "Response") (Doc. No. 13), Lyons concedes to the dismissal of his state law claim. (Doc. No. 13 at PageID 100.) However, Lyons argues that he has sufficiently pled his First Amendment retaliation claim to survive Defendants' Motion. (Doc. No. 13) For the reasons discussed below, the Court **GRANTS** the Motion.

1

I.  **BACKGROUND**

Since 1995, Lyons has been employed by the District as a seventh-grade social studies teacher at Tecumseh Middle School in New Carlisle, Ohio ("TMS")). (Doc. No. 9 at PageID 54.) Lyons alleges that, with the exception of the discipline at issue in this action, he has never received any written discipline throughout his tenure with TMS. (*Id.* at PageID 55.)

For some time leading up to the calendar year 2020, Lyons began perceiving of issues with the District's handling of student misconduct. (*Id.*) Lyons was allegedly "troubled by the instances of students acting out towards teachers and administrators without consequence." (*Id.*) Sharing his frustration, leadership in the local teachers' union asked Lyons to speak on the issue of student misconduct at the District's board meeting on February 25, 2020 (the "Board Meeting"). (*Id.*) At this meeting, several teachers complained to the board and Crew of the District's failure to address student misconduct. (*Id.*) Lyons was the last to speak and he allegedly only provided brief remarks cosigning the statements made by his colleagues. (*Id.*) Following the Board Meeting, Lyons continued on teaching seventh-grade social studies at TMS. (*Id.*) Lyons taught through the remainder of the 2019-2020 school year and for the entirety of the 2020-2021 school year without incident. (*Id.*)

Lyons alleges that at the beginning of the 2021-2022 school year, he and his cohorts were warned of rising seventh-graders who developed reputations for bad behavior in the previous grade. (*Id.*) One such child was in Lyons' class. (*Id.* at PageID 56.) On November 5, 2021, the student attempted to leave Lyons' class to use the restroom without first asking permission. (*Id.*) Lyons scolded the student and instructed him to ask for permission to use the restroom properly. (*Id.*) When the child disobeyed, Lyons blocked the classroom door and gripped the door handle. (*Id.*) An altercation ensued where the child allegedly pushed Lyons and Lyons physically

restrained the child. (*Id.*) At least one other TMS staff member attempted to help resolve the incident, but Lyons refused their assistance. (Doc. No. 9-1 at PageID 67.) The altercation only ended when "the student relented and finally asked for permission to use the restroom." (Doc. No. 9 at PageID 56.)

Unbeknownst to Lyons, another student in his class made a video recording of the described incident. (*Id.* at PageID 57.) That video allegedly circulated among the student body and eventually made its way to TMS administration as well as Crew. (*Id.*) Additionally, the local sheriff's office was called to TMS on November 5, 2021, following the altercation, though Lyons and the student were cleared of any criminal charges.[1] (*Id.* at PageID 60.) Nevertheless, Lyons was placed on administrative leave pending the District's investigation of the incident. (Doc. No. 9 at PageID 57.)

On November 12, 2021, the District, through Crew, provided Lyons with a Notice of Disciplinary Charges and Pre-Disciplinary Hearing (the "Charges") and placed a copy in his personnel file. (Doc. No. 9-1.) Lyons alleges that the Charges mischaracterized the subject event by stating that Lyons "placed his arm around the student's neck" and that Lyons' purported reason for initiating and continuing the altercation was the child's failure to say "please" when asking permission to go to the restroom. (Doc. No. 9 at PageID 57-58; Doc. No. 9-1 at PageID 65.) Following the pre-disciplinary hearing, the District, again through Crew, served Lyons with a Notice of Suspension (the "Notice"), placing Lyons on a five-day unpaid suspension. (Doc. No. 9 at PageID 59; Doc. No. 9-2.) Lyons similarly alleges that the Notice mischaracterized the November 5 incident, though the Notice notably did not state that Lyons "placed his arm around

---

[1] WHIO Staff, Tecumseh middle school teacher on leave after 'extended physical altercation' in classroom, WHIOTv7 (Nov. 17, 2021, 10:37 AM), https://www.whio.com/news/local/tecumseh-middle-school-teacher-leave-amid-investigation/KRJZP4JIT5A3VCTBXYZQLFBGU4/.

3

the student's neck." (Doc. No. 9 at PageID 59; Doc. No. 9-2 at PageID 67.)

Through his local teachers' union, Lyons responded to his suspension by submitting a formal grievance to the District. (Doc. No. 9 at PageID 59.) Lyons' grievance then proceeded to arbitration. (*Id.*) After hearing all the evidence, the arbitrator ultimately found that the District only had just cause to discipline Lyons with a three-day paid suspension. (Doc. No. 9 at PageID 59.)

Lyons believed that Defendants' disciplinary actions against him for the November 5, 2021, incident were taken in retaliation for his remarks at the February 2020 Board Meeting. (*Id.* at PageID 62.) On March 13, 2023, Lyons filed the instant Complaint. (Doc. No. 1.) He later filed the Amended Complaint likewise alleging two counts: (1) retaliation for the exercise of free speech protected by the First and Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983, and (2) retaliation in violation of the Ohio Constitution. (Doc. No. 9 at PageID 62-63.) On July 31, 2023, Defendants filed the present Motion. (Doc. No. 12.) On August 21, 2023, Lyons filed his Response (Doc. No. 13) and on September 5, 2023, Defendants filed their Reply (Doc. No. 14). Thus, the Motion is fully briefed and ripe for review and decision.

## II. STANDARD OF REVIEW

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P 12(c) are reviewed under the same standard as motions to dismiss for failure to state a claim per Rule 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). When considering a motion for judgment on the pleadings, "[a]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law." *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted). However, the court "need

not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Hindel*, 875 F.3d at 346-347 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal quotation marks omitted). "[T]he plaintiff must provide the grounds for its entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted). "A plaintiff falls short if [the plaintiff] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-679); *see also Twombly*, 550 U.S. at 557 (a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement").

In reviewing motions for judgment on the pleadings, courts primarily consider the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Though the allegations contained in the complaint form a court's primary focus, courts may also account for "matters of public record, orders, [and] items appearing in the record of the case." *Barany-Snyder v. Weiner*,

5

539 F.3d 327, 332 (6th Cir. 2008). Additionally, courts may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

### III. ANALYSIS

#### A. Preliminary Matters

As an initial matter, the Court addresses two issues. First, Lyons has consented to the dismissal of his state law claim for violation of the Ohio Constitution. (Doc. No. 13 at PageID 100.) As such, the Court dismisses Count Two of the Amended Complaint.

Second, the Court acknowledges Defendants' various separate arguments for judgment on the pleadings in this matter. Specifically, Defendants argue that: (1) Lyons has failed to successfully plead a First Amendment retaliation claim; (2) Defendants have a legitimate business justification for taking adverse employment action against Lyons; (3) Crew is entitled to qualified immunity; (4) Lyons has failed to allege a custom or policy underlying the alleged retaliation; and (5) Lyons has no viable claim for punitive damages against Defendants. (Doc. No. 12 at PageID 86, 91, 94, 95, 96, 98.) The Court finds that the current Motion may be decided on whether Lyons has sufficiently pleaded his First Amendment retaliation claim alone. Therefore, the Court focuses its analysis on the adequacy Lyons' First Amendment retaliation claim.

#### B. Lyons' First Amendment Retaliation Claim

"To prevail on a civil rights claim pursuant to 42 U.S.C. § 1983," plaintiffs "must demonstrate" that a person acting under color of state law deprived them of a right protected by the U.S. Constitution. *Holsapple v. Cunningham*, 817 F. App'x. 95, 101 (6th Cir. 2020) (quoting *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)); 42 U.S.C. § 1983. Broadly speaking, courts have long recognized that retaliation for the exercise of one's First Amendment rights may amount

to the deprivation of a constitutionally protected right. *See e.g., Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274, 97 S. Ct. 568 (1977). To succeed on such a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must make the following *prima facie* showing:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).

The Parties here do not dispute that Defendants acted under color of state law. However, Defendants submit Lyons has failed to establish that Defendants deprived him of a constitutionally protected right. (Doc. No 12 at PageID 86-94.) Specifically, Defendants argue that Lyons has failed to adequately plead the first and third prongs of the required *prima facie* case for First Amendment retaliation.[2] (*Id.* at PageID 86-94.) Conversely, Lyons generally posits that his allegations sufficiently establish his *prima facie* case to survive Defendants' Motion on both fronts. The Court accordingly considers whether Lyons has sufficiently pled (i) that his speech at the Board Meeting constituted protected speech, and (ii) a causal connection between his comments at the Board Meeting and the discipline for his involvement in the November 5 incident.

### i. Protected Speech

Regarding Lyons' *prima facie* case for First Amendment retaliation, the Court must first determine whether Lyons' alleged speech was constitutionally protected. Defendants contend that Lyons spoke at the Board Meeting as the District's employee rather than as a citizen. (Doc. No.

---

[2] In a footnote, Defendants also contend that Lyons never suffered an adverse employment action. (Doc. No. 12 at PageID 86.) Without more, the Court makes no finding respecting this argument and disregards the argument for purposes of this Motion.

7

12 at PageID 86-91.) They submit that this precludes Lyons' speech from constitutional protection as a matter of law. (*Id.* at PageID 90.) On the other hand, Lyons argues he has properly pled that he spoke at the Board Meeting as a private citizen. (*Id.* at PageID 103.) In particular, Lyons argues that he spoke at the Board meeting pursuant to his union activities and such speech cannot be made pursuant to his official duties. (*Id.* at PageID 103-104.)

It has been generally accepted that government employees must come to terms with certain restrictions on their speech. *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951 (2006) ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom"). Nonetheless, citizens entering into public service "do not forfeit all their First Amendment rights" as a function of their employment. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Garcetti*, 547 U.S. at 417; *Connick v. Myers*, 461 U.S. 138, 142, 103 S. Ct. 1684 (1983)). A government employee's speech may be constitutionally protected if made on a matter of public concern as a private citizen. *Evans-Marshall v Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337-338 (6th Cir. 2010) ("*Evans-Marshall II*") (internal citations omitted). When these requirements are satisfied, a government employee's speech will be protected if the employee's First Amendment interests are not outweighed by the state's interest in promoting governmental efficiency. *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568. 88 S. Ct. 1731 (1968)).

To determine whether a government employee has spoken as a private citizen, courts consider the "content and context" of the employee's speech. *Handy-Clay*, 695 F.3d at 540 (citing *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010)). Speech made pursuant to a public employee's official duties "owes its existence" to the government employer. *Garcetti*, 547 U.S. at 421-22. Naturally, employee speech that "is itself ordinarily

within the scope of an employee's duties" is made pursuant to the employee's official duties and cannot be considered private speech. *Boulton v. Swanson*, 795 526, 533-34 (6th Cir. 2015) (internal citations and quotation marks omitted). Under such circumstances, the government is the speaker rather than the individual. *Evans Marshall II*, 624 F.3d at 338 (citing *Garcetti*, 547 U.S. at 421). However, speech merely concerning a government employee's duties or otherwise relating to "the public employment itself" may constitute private speech. *Boulton*, 795 F.3d at 534. In other words, public employee speech will not be hamstrung simply because those employees have knowledge of governmental workings. *Lane v. Franks*, 573 U.S. 228, 236, 134 S. Ct. 2369 (2014) ("There is considerable value . . . in encouraging, rather than inhibiting, speech by public employees . . . government employees are often in the best position to know what ails the agencies for which they work") (internal citations and quotation marks omitted).

In the instant case, Lyons' has adequately pleaded his comments at the Board Meeting to presume them constitutionally protected for purposes of this Motion. Defendants suggest that Lyons' speech cannot be private speech because he and his colleagues attended the Board Meeting to complain about how unchecked student misconduct affected their ability to perform their employment responsibilities of teaching. (Doc. No. 12 at PageID 90.) Yet, student behavior at school is a matter of public concern regardless of whether it relates to teachers' employment responsibilities. To be sure, "[t]he essence of a teacher's role is to prepare students for their place in society as responsible citizens," and regulating their students' behavior would seem essential to this goal. *Evans Marshall II*, 624 F.3d at 339 (quoting *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 679 (6th Cir. 2001)) (internal quotation marks omitted).

Moreover, Lyons alleges that he spoke at the Board Meeting on behalf of the local teachers' union. (Doc. No. 9 at PageID 55.) For all intents and purposes, Lyons spoke at the Board meeting

9

in keeping with his union activities. Indeed, "[i]t is axiomatic that an employee's job responsibilities do not include acting in the capacity of a union member, leader, or official." *Boulton*, 795 F.3d at 534. Accordingly, the Court finds that Lyons' speech at the Board Meeting was constitutionally protected at this point in the proceedings.

### ii. Causal Connection

The Court now turns to whether there is any discernable causal link between Lyons' speech and the disciplinary actions taken against Lyons for his involvement in the November 5 incident. Defendants posit that Lyons has failed to plead any viable causal connection between his speech and adverse employment action. (Doc. No 12 at PageID 92.) In this vein, Defendants argue that the disciplinary action taken against Lyons for the November 5 altercation lacks temporal proximity to his speech at the Board Meeting. (*Id.* at PageID 93.) Lyons responds by arguing that the Court should infer a causal link here from Crew's alleged mischaracterizations of the November 5 incident. (Doc. No. 13 at PageID 104.) Lyons further contends that the lack of temporal proximity in this case is immaterial because Defendants had no opportunity to retaliate against Lyons for his remarks at the Board Meeting prior to November 5, 2021. (*Id.* at PageID 106.)

As stated above, to plead a causal connection in First Amendment retaliation cases, plaintiffs must establish that the adverse action at issue was motivated at least in part by protected conduct. *Vereecke*, 609 F.3d at 399 (internal citations and quotation marks omitted). To this end, plaintiffs must show that their protected activities were "essentially a but-for cause – without which the action being challenged simply would not have been taken." *Holsapple*, 817 F. App'x. at 101 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal citations omitted)) (internal quotation marks omitted). "Bare allegations" of causation will not suffice to

establish a First Amendment retaliation claim. *Id.* (citing *Crawford-El. v. Britton*, 523 U.S. 574, 588, 118 S. Ct. 1584 (1998)). Instead, Plaintiffs must "point to specific, nonconclusory allegations reasonably linking" their protected speech to adverse employment action. *Id.* (quoting *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003)) (internal quotation marks omitted).

Temporal proximity between a plaintiff's protected speech and the alleged retaliatory action may allow for the inference of a causal connection. *Eckerman v. Tenn. Dep't. of Safety*, 636 F.3d 202, 209 (6th Cir. 2010) ("A causal link can be shown through direct or circumstantial evidence, including showing temporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation") (internal citations omitted). Yet, temporal proximity alone will not suffice to establish causation for a First Amendment claim. *Vereecke*, 609 F.3d at 400 (quoting *Tuttle v. Metro. Gov't. of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). Allegations of temporal proximity should be accompanied, when possible, by other indicia of retaliatory conduct to support a causal inference. *Id.* (quoting *Randolph v. Ohio Dep't. of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)).

Similarly, plaintiffs must substantiate the causal connection between their protected speech and adverse employment action with more evidence – or in this case, allegations – as more time passes. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008) ("[T]he more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim . . ."). A temporal gap between a plaintiff's protected activity and retaliatory action can be justified if the plaintiff alleges that his employer had no prior opportunity to retaliate. *George v. Youngstown State Univ.*, 966 F.3d 446, 468 (6th Cir. 2020) (internal citations omitted). However, even then, the plaintiff must still point to some supplemental allegations supporting causation. *Id.* ("[S]ome of the irregularities mentioned . . . also support a

11

prima facie showing of causation, at least when combined with the timing of this decision"). A defendant's "knowledge and disapproval" of a plaintiff's public criticisms is not an adequate causal link to supplement a temporal gap. *Cooperrider v. Beshear*, No. 3:22-cv-16, 2023 U.S. Dist. LEXIS 49386, at *25, 2023 WL 2612603 (E.D. Ky. Mar. 23, 2023).

Here, Lyons' allegations of a causal link simply strain credulity. Lyons provided admittedly brief remarks at the Board Meeting on February 25, 2020. (Doc. No. 9 at PageID 55.) Defendants did not subject Lyons to discipline until nearly two years later. (Doc. No. 9 at PageID 57-60; Doc. No. 13 at PageID 104.) This wide temporal gap suggests no causal link between the two events. Moreover, Lyons does not allege supplemental facts to otherwise provide the inference of retaliation in response to Lyons' protected speech. Rather, Lyons asks the Court to infer retaliation from Crew's knowledge of his protected speech at the Board Meeting. (Doc. No. 9 at PageID 55.)

The Court accepts that Defendants had no realistic opportunity to retaliate against Lyons for his speech until nearly two years after the fact. (Doc. No. 13 at PageID 106.) Though, there are no allegations that, when combined with this fact, provide a sufficient inference of causality. For instance, Lyons relies heavily on the allegations that Crew mischaracterized the November 5 incident. (*See e.g.*, Doc No. 9 at PageID 57.) When coupled with the timing of Defendants' disciplinary action, the Court is left with no more than the mere possibility of misconduct.

Further, even drawing all inferences in the light most favorable to Lyons, Crew's potential misconduct does not suggest retaliation for Lyons' speech. The fact remains that on November 5, 2021, Lyons had a physical confrontation with a seventh-grade student. (Doc. No. 9 at PageID 56.) Lyons does not deny that he physically restrained the child, only that he placed his arm around the child's neck. (*Id.* at PageID 57-58.) Lyons does not dispute that such restraint deprived the

student of basic needs (i.e., using the restroom), in violation of school board policy.  (Doc. No. 9-1 at PageID 66).  Importantly, this incident was video recorded, the video was circulated, and local news media reported on the event. (Doc. No. 9 at PageID 57, 60.)  Defendants could not reasonably be expected to turn a blind eye to a physical altercation between a seventh-grade student and an adult teacher and also protect TMS's interests.  Given the fact that Lyons did engage in publicized misconduct that day, the Court cannot reasonably suggest the subsequent disciplinary action taken against Lyons was retaliatory.

In sum, there are simply no reasonable inferences to be drawn in favor of a causal connection in this case.  *Evans-Marshall v Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) ("*Evans-Marshall I*") (quoting *Hishon v. King & Spalding*, 467 U.S. 60, 73, 104 S. Ct. 2229 (1984)).  Hence, Lyons has failed to sufficiently plead causation with respect to his First Amendment retaliation claim.

### IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. No. 12), **DISMISSES** the Amended Complaint (Doc. No. 9), and instructs the Clerk of Court to **TERMINATE** this case on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 3, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
